```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                   HOUSTON DIVISION

 3    ****************************************************************

 4    WIDMER JOSNEYDER              4:25-cv-02116
      AGELVIZ-SANGUINO, ET AL.
 5
      VS.                          HOUSTON, TEXAS
 6

 7    KRISTI NOEM, ET AL.          MAY 19, 2025

 8
      ****************************************************************
 9
             TRANSCRIPT OF MOTION HEARING PROCEEDINGS
10       HEARD BEFORE THE HONORABLE KEITH P. ELLISON
                UNITED STATES DISTRICT JUDGE
11
      ****************************************************************
12
      APPEARANCES:
13
      FOR THE PLAINTIFF:          Mr. Roberto Javier Rivera
14                                Ms. Varsha Shirhatti
                                  RIVERA & SHIRHATTI, PC
15                                P.O. Box 848
                                  Houston, Texas 77001
16

17    FOR THE DEFENDANTS:         Mr. Jimmy A. Rodriguez
                                  U.S. ATTORNEY'S OFFICE
18                                1000 Louisiana St., Suite 2300
                                  Houston, Texas 77074
19

20    Official Court Reporter:    David S. Smith, CSR, RPR, CRR
                                  Official Court Reporter
21                                United States District Court
                                  Southern District of Texas
22                                515 Rusk Street, Room 8004
                                  Houston, Texas 77002
23                                david.smith@txs.uscourts.gov

24
            Proceedings recorded by mechanical stenography,
25    transcript produced via computer.
```

1                     **P R O C E E D I N G S**

2          THE COURT:  Good afternoon and welcome.  This is

3    Keith Ellison.  We're on the record in Sanguino versus Noem.

4               We'll take appearances of counsel, please,

5    beginning with plaintiffs.

6          MR. RIVERA:  Javier Riviera for the plaintiff.

7          MS. SHIRHATTI:  Varsha Shirhatti for the plaintiff.

8          THE COURT:  Okay.  Y'all went through that too quickly.

9    One more time.

10              For the plaintiff?

11         MR. RIVERA:  For the plaintiff, Javier Rivera.

12         THE COURT:  Okay.  Mr. Rivera, thank you very much.

13              I heard a female voice.  I didn't catch it.

14         MS. SHIRHATTI:  I apologize, Your Honor.  For the

15   plaintiff, Varsha Shirhatti.

16         THE COURT:  Varsha Shirhatti.  I've got you.  Okay.

17              For the defendants?

18         MR. RODRIGUEZ:  Good afternoon, Your Honor.  This is

19   Jimmy Rodriguez from the U.S. Attorney's Office.

20         THE COURT:  Good to have you, Mr. Rodriguez.

21              Thank you, everybody, for being available on

22   short notice.

23              I guess primarily today I want to gather a few

24   facts.  Mr. Rodriguez may be the best person to start with.

25              Do you know where the plaintiff is right now?

1    MR. RODRIGUEZ:  I do not, Your Honor.  I was made aware

2    of today's hearing.  I am certainly aware of the complaint; but

3    I -- unfortunately I don't have specific information regarding

4    that.  I would say I've worked with Mr. Rivera over the years

5    as opposing counsel; and he's always, you know, as an officer

6    of the court, made accurate representations.  I have no reason

7    to doubt the allegation in the complaint that the plaintiff is

8    in the El Salvador facility.

9        THE COURT:  Do we know for sure he is not still in this

10   country?

11       MR. RODRIGUEZ:  I don't know for sure, Your Honor.  I

12   don't want to answer that, and I don't want to speculate.

13       THE COURT:  Can we at least get the government's

14   commitment not to move him until we have an evidentiary hearing

15   in this matter?

16       MR. RODRIGUEZ:  Your Honor, I believe -- and Mr. Rivera

17   can correct me if I am wrong.  I believe the allegation is that

18   he is already in the facility in El Salvador.

19       THE COURT:  It's an allegation.  I'm just not sure how

20   reliable any allegations are this early in the case and with

21   the whole process so shrouded in mystery.

22       MR. RODRIGUEZ:  Yes.  Your Honor, if he is here in the

23   district, I believe Judge Rodriguez's order and certification

24   of a class for all persons who are in the district are not

25   allowed to be sent to the El Salvador facility, the government

1   is complying with that order.  So that would address that

2   concern.

3            THE COURT:  Okay.  Who would know more about the

4   location of the plaintiff or the circumstances of his alleged

5   removal?

6            MR. RODRIGUEZ:  It would be personnel at the Department

7   of Homeland Security in combination with personnel at the

8   Department of State, Your Honor.

9            MR. RIVERA:  Your Honor, Javier Rivera speaking.

10            The reason we believe that he is currently in

11   CECOT is because he was in removal proceedings in a detention

12   facility under the custody of the Department of Homeland

13   Security as of March 15th of this year, and then all

14   communication with his attorney and family stopped.  His name

15   was published on a list of individuals on the plane manifest

16   that was bound for El Salvador that was published through the

17   news media.  This is the only known confirmation that we have

18   on the plaintiff's side that he is gone.  We know for a fact

19   he's not in the custody of the Department of Homeland Security

20   because the immigration court has dismissed his matter for lack

21   of jurisdiction, stating he's no longer in their custody.  So

22   we believe he is actually currently in CECOT in El Salvador.

23   What we are seeking from the government is evidence and

24   documentation that he is, in fact, where we believe he is.

25            THE COURT:  What do you propose we do next?  We can

1    certainly ask Mr. Rivera, we can certainly ask the government

2    to try to locate and try to find his exact location.  Are you

3    asking for an evidentiary hearing this week?

4         MR. RIVERA:  As an initial matter we would like

5    verification where our client is and a welfare check

6    essentially.  No one's had communication with him for two

7    months; and we would like to know, you know, his whereabouts,

8    his health, his safety.  We'd not only like to know where he's

9    at and confirmation that he is where we think he is; but,

10   Number 2, we would like to establish a line of communication

11   with him so we may actually check on him to see how he's doing.

12   I think that is the exigent circumstances that caused this

13   emergency motion to be filed is we need a welfare check on our

14   own client, his whereabouts.

15        THE COURT:  And have you spoken to Mr. Rodriguez about

16   that?

17        MR. RIVERA:  I have not spoken to Mr. Rodriguez on --

18   specifically on his whereabouts.

19        THE COURT:  No, about opening a line of communication.

20        MR. RODRIGUEZ:  Your Honor, I would -- you know, as a

21   representative of the government, I would like an opportunity

22   to respond in writing to their requests; and obviously we could

23   do that on an expedited basis.  But in the meantime I'm more

24   than happy to talk to Mr. Rivera.  As I said before, we've

25   worked together in the past.  I just -- I can't make any

1  representations on the call today about what I can and can't

2  provide.

3      THE COURT:  Let me go back to Mr. Rivera.

4          Procedurally what are you asking me to do?  I

5  understand we want to find the whereabouts and the welfare of

6  the plaintiff, but are you asking for an evidentiary hearing or

7  a legal argument or what are you asking for?

8      MR. RIVERA:  I'm specifically asking for just an order

9  from the Court that the government provide evidence of his

10  whereabouts.  We would like them to inform the Court and the

11  plaintiff's counsel where he is and, Number 2, if he is where

12  we believe he is, to establish a line of communication since

13  they have him in their custody.

14      THE COURT:  Will you object to any of that,

15  Mr. Rodriguez?

16      MR. RODRIGUEZ:  Yes, Your Honor.  You know, these

17  matters are very important; but they're also very sensitive and

18  making representations about what information I can provide or

19  something like a line of communication, which may seem simple

20  on its face, is complicated here to the extent that it would

21  involve El Salvadoran officials having to take some actions.

22  These are issues that are being heavily litigated right now in

23  the District of Columbia and Maryland.  That's why I would

24  prefer Your Honor order us to respond in writing to their

25  requests these items and we would explain to the Court what we

1    can and can't provide.  In the interim I'm more than happy to

2    talk to Mr. Rivera informally and see what, if anything, we can

3    provide.

4         THE COURT:  I'm sure you and Mr. Rivera can have a

5    worthwhile communication, but let me explain what my

6    responsibilities are right now since the situation does seem to

7    be fast-moving.  Why was he deported in the first place?

8         MR. RIVERA:  I'm sorry, Your Honor.  Were you directing

9    that to plaintiff?

10        THE COURT:  I'm asking Mr. Rodriguez.

11        MR. RODRIGUEZ:  The information that I -- the

12   information that I have available is based on the allegations

13   in the complaint, Your Honor.  The allegation in the complaint

14   is that he was deported pursuant to the Alien Enemies Act.

15        THE COURT:  Hasn't that reliance been undermined by the

16   Supreme Court decision last week?

17        MR. RODRIGUEZ:  I'm sorry.  You cut out, Your Honor.

18        THE COURT:  Hasn't that theory been undermined by the

19   Supreme Court's decision last week?  Hasn't that avenue of

20   deportation been pretty well closed off by the Supreme Court?

21        MR. RODRIGUEZ:  I think Your Honor is describing the

22   Supreme Court orders with regard to persons that are still in

23   the United States and the ability of the government to send

24   additional persons to the facility --

25        THE COURT:  Under the Alien Enemies Act, yes.

1      MR. RODRIGUEZ:  Correct.  Correct.  As far as persons

2   that are there now and being returned to the United States,

3   that issue is being litigated in the District of Columbia.

4   There is, I think, a fully briefed motion for preliminary

5   injunction that would apply to all persons who are there; and I

6   think they filed a motion.  There's been a reply and response,

7   and so that case is ahead of this one where those issues

8   concerning the ability to bring people back are being

9   addressed.

10      THE COURT:  Well --

11      MR. RODRIGUEZ:  I would also say, Your Honor, that if

12   the plaintiffs want some type of immediate temporary emergency

13   injunctive relief that they be asked to file a motion

14   specifically asking for what they need.  If Your Honor is

15   struggling about what to do, I think the struggle is this isn't

16   being teed up in a TRO or a PI in the normal course of business

17   that would allow the Court and the parties to understand what

18   the government is being asked, what the irreparable harm is,

19   what their legal theory is; and like, Your Honor, maybe we

20   would address the legality of what has happened or what could

21   happen.  The request for an emergency hearing, you know, we're

22   happy to be here; but it's difficult to litigate this way.

23      THE COURT:  Well, we're definitely going to have a

24   chance for you to respond and a chance for plaintiffs to fill

25   in more in regards to the facts of the situation.  We'll do

1  that for sure, but I want to make certain that in the interim

2  the government does not move the plaintiff farther beyond our

3  reach or take any other disciplinary action or remedial action

4  affecting him.  That's where I'm going.  It's not always clear

5  to me that the executive branch and the judicial branch have

6  communicated as well as they should have in this series of

7  cases.  Can we at least get a commitment from the government

8  that no further removal will be made of the plaintiff and no

9  disciplinary action will be taken toward him?

10        MR. RODRIGUEZ:  Your Honor, I'm not trying to be

11  evasive; and I think Your Honor knows me and knows that I do my

12  best to give the Court the information that it needs.

13        THE COURT:  I know that.

14        MR. RODRIGUEZ:  Yes.  But I'm not authorized to make

15  any representations about this person and it's not that I think

16  I'm trying to cover for something that's going to happen.  I

17  honestly don't know, and I'm not authorized to make

18  representations.  I told Your Honor earlier that we are

19  complying as far as I know with Judge Rodriguez's order which

20  concerns people here; but as far as where the plaintiff is, I

21  don't know and additional movements I can't -- I can't make

22  representations on that.  I apologize.

23        MR. RIVERA:  Your Honor, that's the big problem that we

24  have moving forward is we're kind of at a difficult crossroads

25  here because we believe he is somewhere, but we don't have any

1    confirmation from anybody other than a news media story that

2    he's actually in CECOT.  This is what we believe and this is

3    the purpose of today's hearing is for the government to provide

4    us affirmative evidence in some way that he is actually in

5    El Salvador and he was forcibly removed from the United States

6    to this third country.

7              Then on the plaintiff's side we're able to

8    chart the course in which we'll move forward with the necessary

9    TROs and injunctive relief.  But we need to know first where

10   he's at and is he all right.  I think that is the big concern

11   on the plaintiff's side and his family's side for sure is that

12   there's been no communication for two months.

13   THE COURT:  Yes.  I understand the dilemma, Mr. Rivera.

14   It's not that I'm blind to that issue.  I'm just trying the

15   best I can to find a way to confront that issue.  Mr. Rodriguez

16   has made a representation that he cannot make guarantees and he

17   does not know the whereabouts of your client, and I'm sure

18   Mr. Rodriguez would not say those things unless it was

19   absolutely true.  So I'm sympathetic to both the plaintiff's

20   plight and the defendant's plight.  I want to make sure the

21   ground doesn't shift while we're waiting to do our briefing or

22   factfinding.

23             I'll get out an order later today.

24             I agree that Judge Rodriguez's opinion appears

25   to be finding on all defendants -- all persons situated in like

1  circumstances; but there's been some objection to district

2  courts making rulings that affect the parties beyond those

3  actually in court.  So I'm not sure now of what the executive

4  branch believes a single district court can do beyond its own

5  reach.

6           Do we have the information we need in order to

7  communicate with all of you properly?  I'm sure we have

8  Mr. Rodriguez's information.

9           Do we have yours, Mr. Rivera?

10  MR. RIVERA:  I believe so, yes, Your Honor.

11  THE COURT:  Okay.  Are all of you going to be here this

12  week, or are any of you traveling out of town?

13  MR. RIVERA:  No, Your Honor.  I'll be here this week,

14  especially for this matter.

15  THE COURT:  Mr. Rodriguez?

16  MR. RODRIGUEZ:  The same.  I'm here, Your Honor.

17  THE COURT:  If you can find out as much as you can for

18  our purposes, Mr. Rodriguez, I'll try to craft an order that

19  will be satisfactory to both sides.  I'm certainly aware that

20  the stakes are high and that the timing is sensitive, so don't

21  fear that I've lost track of those points.

22           Thank you all for your availability today.

23  Thank you very much.

24  MR. RODRIGUEZ:  You thank you, Judge.

25  MR. RIVERA:  Thank you.

1          MS. SHIRHATTI:  Thank you.

2               (The proceedings were adjourned.)

3                         * * * * *

4               COURT REPORTER'S CERTIFICATE

5          I, David S. Smith, CSR, RPR, CRR, Official
   Court Reporter, United States District Court, Southern District
6  of Texas, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
7  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

8

9                         ___/s/ David S. Smith_____
                          Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25